**Frederick RAGNO, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2006.
Decided Jan. 16, 2007.

---

9. Having so decided, we need not address the remaining issues Carey raises on appeal.

Michael G. Dryden, Philadelphia, for petitioner.

Jennifer Chun Strawn, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge McGINLEY.

*History*

Frederick Ragno (Claimant) worked as a firefighter for the City of Philadelphia (Employer). He suffered a work-related back injury on August 12, 1986. Claimant received benefits at the maximum allowable rate of $347.00 per week pursuant to a notice of compensation payable. Claimant signed a final receipt dated July 28, 1987. The final receipt stated that Claimant received compensation in the total amount of $30,138.56 covering a period of 43 4/7 weeks from the date of disability which began on August 13, 1986, until he was able to return to work on June 1, 1987, without a loss of earnings.

On or about April 6, 1987, Claimant petitioned for benefits and alleged that he sustained a work-related injury on or about August 12, 1986. The referee [1] is-

---

1. At the time, a workers' compensation judge (WCJ) was known as a referee.

sued a decision circulated on March 29, 1990, which treated the petition as a petition to set aside final receipt, and granted the petition.

On or about March 12, 1996, Employer petitioned to modify or suspend compensation benefits as of June 29, 1995. In a decision circulated March 10, 2000, the WCJ granted the petition for modification of compensation benefits effective July 10, 1995. The WCJ awarded partial disability benefits from July 10, 1995, to August 27, 1997, at the rate of $74.75 per week. The WCJ granted Employer's petition for suspension of compensation benefits effective August 28, 1997. The WCJ made the following relevant findings of fact:

10. Claimant began employment for employer as a firefighter in 1963. Claimant took regular retirement in 1987 or 1988, then 48 or 49 years of age. Claimant testified on April 28, 1997 [2] that he considers himself retired at the present time. Claimant also testified at the deposition that if he had not hurt his back in 1986 he would not have retired, and he believes that he would still be working as a firefighter today if he had not hurt his back. Claimant was 58 years of age at the time of the deposition.

11. Claimant admits to receiving letter dated June 29, 1995 from employer offering him the job of Fire Communications Dispatcher for Employer, stating therein that the job classification is sedentary and within the physical capacities as established by William Bonner, M.D., and paid an annual wage of $21,308.00. Claimant was to begin work on Monday, July 10, 1995, at 9:00 am. [sic]. Claimant did not report for work on July 10, 1995 or ask any questions about any part of the job or what was involved in the job. Claimant admits to not having applied for any work since 1988. Claimant contends that if he took the job of Fire Communications Dispatcher for employer he would lose his pension from the Fire Department because the dispatcher position is in a different union.

. . . .

15. Employer presented the testimony of William F. Bonner, M.D. taken by deposition on August 28, 1996. Dr. Bonner is board certified in physical medicine and rehabilitation.

. . . .

18. Dr. Bonner rendered opinions that as of March 16, 1995 claimant had obtained maximum medical improvement and was not in need of any further medical care. He reported that claimant has minimal changes noted on his MRI and has minimal clinical findings, however, Dr. Bonner testified, apparently based on claimant's subjective complaints (Dr. Bonner was never asked whether Claimant had fully recovered from the injury of August 12, 1986), that claimant was capable of performing tasks with restrictions indicated in the doctor's physical capacities form concerning sitting, standing, walking, lifting, carrying repetitive foot motions, and continuous bending, climbing, crawling or squatting. Dr. Bonner reviewed the job description of Fire Communications Dispatcher and approved the job for claimant.

. . . .

21. Claimant presented no expert medical testimony, or expert medical advice, on the merits of the case. Dr. Bonner's expert medical testimony, findings, and opinions are unrefuted and unrebutted.

. . . .

2. Elsewhere, the WCJ refers to the date of Claimant's testimony as August 28, 1997.

30. Employer presented the testimony of James Kidwell taken by a global deposition on September 4, 1997, involving a number of workers' compensation cases in addition to the case sub judice. Kidwell is employed by employer as a Pension Program Administrator for the Board of Pensions and Retirement, dealing with both the uniform division and civilian division, encompassing all employees of employer.

31. Kidwell testified with regard to claimant's retirement on pension plan, the 1967 Plan X for firefighters, and other plans, for persons hired before July 1, 1988 and subject to the 1956 Municipal Retirement Ordinance. Kidwell explained that under this plan, which applies to claimant, the normal retirement age for firefighters is 45. The Judge notes that claimant was 45 years of age on January 4, 1984. In claimant's particular circumstance, claimant has been receiving and continues to receive an ordinary retirement pension based on his age and length of service upon retirement and separation from active duty. Pursuant to Kidwell's and Norwood's [Denis Norwood, Personnel Analyst 3 specializing in benefits administration for Employer] testimony, if claimant had accepted a service-connected disability from employer, as he receives a work-related disability under workers' compensation, he would have received 70% of his salary tax free but this sum would have been offset dollar for dollar for any workers' compensation benefits he received. In receiving ordinary retirement pension benefits under Plan X, if claimant accepted the position of Fire Communications Dispatcher on July 10, 1995, or thereafter, a civilian municipal employment job, he would have been transferred to Plan J and his benefits under Plan X would be suspended during the period of this civilian employment. He would accumulate Plan J benefits until separation by retirement or otherwise. If his civilian service was less than a year, he would not be entitled to any Plan J benefits, his contributions into the plan would be reimbursed, and his Plan X benefits would be reinstated. During this period of reemployment with employer, or any longer period of reemployment, claimant would be paid the salary for the position of Fire Communications Dispatcher, subject to taxes, Social Security and Medicare contributions and other withholdings as with any other civilian employee. If claimant worked for more than one year but less than three years, a Plan J benefit would be calculated based on service of less than three years, and added to the fire benefit he was receiving. With reemployment more than three years, a new Plan J. benefits calculation would be made taking into account his prior years of service in the uniform division, add it to the Plan J time, and if this calculation is higher than his previous pension benefit as a retired firefighter, he would receive this benefit. The normal retirement age for a civilian municipal employee is 55. The Judge notes that in July 1995 claimant was 56 years of age, so that the age requirement for retirement under Plan J would not be a barrier for claimant. Importantly, claimant's pension benefits will never be less than what he was originally receiving, and more likely will be more depending on his length of reemployment, i.e., in excess of one year as a Fire Communications Dispatcher.

. . . .

35. The Judge finds the testimony, findings, and opinions of William F. Bonner, M.D. competent, credible, and persuasive, including but not limited to, that claimant was physically capable of per-

forming the job of Fire Communications Dispatcher pursuant to his evaluation of claimant on March 16, 1995, supported by his clinical findings, review of medical records and diagnostic test results, claimant's history and testimony, and surveillance reports.

. . . .

37. The Judge finds the testimony of James Kidwell to be credible and persuasive.

. . . .

45. Claimant failed to demonstrate good faith by failing to follow through on the job referral.

46. The Judge finds that as of August 28, 1997 when he testified, claimant considered himself to be retired, and claimant had voluntarily removed himself from the labor market.

WCJ's Decision, March 10, 2000, (2000 Decision), Finding of Fact Nos. 10–11, 15, 18, 21, 30–31, 35, 37, 45–46 at 4–7, and 9–11; R.R. at 13a–16a, 18a–20a.

The WCJ made the following relevant conclusions of law:

1. Employer has sustained its burden in proving by sufficient competent evidence that claimant's condition has changed from total disability to partial disability, and has proved by sufficient competent evidence that claimant was referred to a then open job in the occupational category for which claimant has been given medical clearance, within the meaning of Sections 306(b), 413, and 422

of the Pennsylvania Workers' Compensation Act.

2. Claimant failed to establish that he demonstrated good faith in following through on the job referral, and claimant's actions and inactions demonstrated bad faith.

3. Employer proved that the position of Fire Communications Dispatcher was actually available to claimant as of July 10, 1995, paying wages of $21,743.00 per year, or $418.13 per week, within any physical restrictions he may have causally related to injury on August 12, 1986. . . .

4. The evidence establishes that claimant has voluntarily removed himself from the work force, and is retired, at least as of August 28, 1997, wherefore he incurs no loss of earning power as of this time and compensation is suspended effective August 28, 1997, in accordance with Sections 306(a), 306(b) and 413 of the Act.

2000 Decision, Conclusions of Law 1–4 at 11–12; Reproduced Record (R.R.) at 20a–21a. Claimant appealed to the Workers' Compensation Appeal Board (Board) which affirmed.

He then petitioned for review with this Court. Before this Court, Claimant contended that the WCJ erred when he granted the modification/suspension petition because the Fire Communications Dispatcher position Employer offered him was not "actually available" to him under *Kachinski*.[3]

This Court determined:

---

**3.** In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987), our Pennsylvania Supreme Court established the procedure for the return to work of injured employees: (1) an employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a

change in condition; (2) the employer must then produce evidence of a referral(s) to a then open job(s) for which the claimant has been given medical clearance; (3) the claimant must then demonstrate that he has in good faith followed through on the job referral(s); and (4) if the referral fails to result in a job then the Claimant's benefits should continue.

Because Claimant here was 56 years old at the time he was offered the Fire Communications Dispatcher position and, therefore, had already reached the retirement age for the municipal pension, he would not have lost a vested pension if he had accepted the position. As such, the position was available to Claimant.

Because Claimant could perform the Fire Communications Dispatcher position, the WCJ did not err in granting Employer's modification/suspension petition.

*Ragno v. Workers' Compensation Appeal Board (City of Philadelphia)*, 896 C.D. 2001 (Filed August 21, 2001), *petition for allowance of appeal denied,* 568 Pa. 640, 793 A.2d 912 (2001).

### Current Controversy

On or about January 28, 2003, Claimant petitioned to reinstate benefits as of January 1, 2002, because his work-related injury caused decreased earning power.

Before the WCJ, Claimant testified "there is pain in the lower back and it goes down into my leg. And sometimes it radiate [sic] up to my shoulders and in the back of my neck. I get some bad headaches from it.... I can't sit and I can't stand too long." Notes of Testimony, October 29, 2003, (N.T.) at 4; R.R. at 25a. Claimant had to move every half hour: "I get up, I walk around. Then I go sit down and try different positions. And then, like I say, when it's really bad I lay [sic] on the floor and bring my knees up to my chest." N.T. at 5–6; R.R. at 26a–27a. Claimant testified that he could not have returned to the fire dispatcher position as of January 1, 2002, because "I can't sit too long and I can't walk around." When asked whether he could handle working an eight hour shift, Claimant responded, "I believe I can't. I would say no to that." N.T. at 6;

R.R. at 27a. Since March of 2000, Claimant unsuccessfully applied for jobs at Wal-Mart and K–Mart. N.T. at 7; R.R. at 28a. Claimant told the WCJ that his symptoms were "a little worse" from March of 2000, until January 2002. N.T. at 15; R.R. at 36a.

Claimant presented the deposition testimony of Herman Palat, D.O. (Dr. Palat), board-certified in family practice and geriatrics and Claimant's treating physician. Dr. Palat diagnosed Claimant with chronic lumbosacral spine strain and sprain, chronic pain syndrome, status post L2–L3 and L3–L4 laminectomy, spinal stenosis and neuroforaminal encroachment at L2–L3 and L3–L4, spondylolistheses as well as retrolisthesis between L2–L3 and L3–L4, facet joint arthritis between L3–L4, and degenerative disc disease at L2–L3 and L3–L4 with some bulging of the discs. Deposition of Herman Palat, D.O., September 25, 2003, (Dr. Palat Deposition) at 14; R.R. at 53a. Dr. Palat did not believe that Claimant was capable of working as a fire communications dispatcher for five days a week, forty hours a week due to his injury, degenerative changes, and the changes that have taken place since he had surgery. Dr. Palat Deposition at 16; R.R. at 55a. Dr. Palat explained that if Claimant had to work in a sitting position with his head down, he would have a difficult time because of his spinal stenosis and a position with a forward inclination of the body from the waist up tended to exacerbate pain and nerve root irritation. Dr. Palat Deposition at 17; R.R. at 56a. Also, Dr. Palat noted that the position required overtime and he did not believe that Claimant could work a forty hour week, let alone overtime. He was also concerned because Claimant could not walk and move about on foot with "very crisp movements." Dr. Palat Deposition at 18; R.R. at 57a. Dr. Palat was also concerned that

Claimant's medications could interfere with his cognition and ability to function. Dr. Palat Deposition at 18; R.R. at 57a. Dr. Palat testified that at no time since November 2001, would he authorize Claimant to work as a fire dispatcher. Dr. Palat Deposition at 19; R.R. at 58a. On cross-examination, Dr. Palat admitted that if Claimant did not have his work injury, his osteoporosis would "complicate his orthopedic problem." Dr. Palat Deposition at 28–29; R.R. at 67a–68a. Also, on cross-examination, Dr. Palat stated, "Well, I really think in a practical sense that I don't think that Mr. Ragno is employable...." Dr. Palat Deposition at 35; R.R. at 74a.

Employer presented the deposition testimony of William H. Spellman, M.D. (Dr. Spellman), a board-certified orthopedic surgeon. Dr. Spellman examined Claimant on October 9, 2003, took a history, and reviewed medical records. Dr. Spellman diagnosed Claimant with ongoing sciatic root irritation that was low grade. Deposition of William H. Spellman, M.D., December 15, 2003, (Dr. Spellman Deposition) at 17; R.R. at 100a. Dr. Spellman opined within a reasonable degree of medical certainty that Claimant could perform the job of fire communications dispatcher. Dr. Spellman Deposition at 18–20; R.R. at 101a–103a.

The WCJ granted the reinstatement petition and ordered Employer to pay Claimant compensation at the rate of $347.00 per week as of January 1, 2002, and ordered Employer to pay Claimant interest of ten percent on the past due compensation. The WCJ made the following relevant findings of fact:

6. This Judge notes that, under *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson)*, 543 Pa. 74, 669 A.2d 911 (1995), for compensation to continue after retirement a Claimant must establish that he is seeking employment after retirement or that he was forced to retire because of a work injury.

7. The Judge accepts the testimony of the Claimant as credible in its entirety. Claimant's testimony establishes that, since March of 2000, he has continued to search for employment, filing [sic] out applications at places such as Wal–Mart and K–Mart. Claimant's testimony also establishes his condition has worsened since January of 2002. Claimant's testimony concerning his disability is credible because it is corroborated by the findings and opinions of his treating physician, Dr. Palat. The Judge has had the opportunity to hear Claimant testify and view Claimant as he did so. Claimant's sincere demeanor before this Court provides additional support for the conclusion that Claimant was accurately recounting his present symptoms and limitations.

8. The Judge accepts the testimony and opinions of the Claimant's medical witness, Herman Palat, D.O., and finds such to be credible and persuasive; further, the Judge accepts Dr. Palat's testimony over that of Dr. Spellman. Dr. Palat was Claimant's treating physician and had the opportunity to treat Claimant on a number of occasions over a period of years. Dr. Palat has consistently evaluated Claimant for his low back since March 2000. His testimony established that each and ever [sic] physical exam revealed positive straight leg raising, decreased range of motion, and reduced reflexes at the Achilles. Dr. Palat reviewed the job description for fire dispatcher and unequivocally asserted that Claimant was not capable of performing this position. Dr. Palat stated that Claimant was unable to perform

the dispatcher position because of injuries he sustained, degenerative changes, and changes that have taken place since the surgery. Dr. Palat opined that Claimant was not employable. The Judge rejects the testimony and opinions of Dr. Spellman as less than credible and less than persuasive. Dr. Spellman saw the Claimant on one occasion. He offered no opinion as to whether Claimant's August 12, 1986 work related injury had worsened as of January 2002. He did note that Claimant has had surgery. Dr. Spellman also noted that his examination was consistent with Claimant having low grade sciatic root irritation and his understanding that Claimant has had a problem with his back since 1986. Dr. Spellman agreed that he did not have any records to review. His opinion, that Claimant could have performed the dispatcher job is rejected as not credible. Any conflict in testimony and opinions is resolved in favor of Dr. Palat.

WCJ's Decision, January 13, 2005, Findings of Fact Nos. 6–8 at 6–7; R.R. at 129a–130a.

Employer appealed to the Board and contended that the WCJ neglected to take into consideration the prior WCJ's decision which found that Claimant voluntarily retired from his employment on August 28, 1997, and that benefits were suspended as a result of this retirement. Employer argued that Claimant was barred by the principles of collateral estoppel and res judicata from relitigating any issues regarding his retirement.

The Board reversed:

Where particular questions of fact essential to the judgment are actually litigated and determined by a final valid judgment, the determination is conclusive between the parties in any subsequent action on a different cause of action. . . .

By Decision and Order circulated March 10, 2000, Judge Harry Shayhorn granted a Suspension Petition filed by Defendant [Employer]. Judge Shayhorn found that Claimant was capable of performing modified duty work, but that as of Claimant's testimony of August 28, 1997, Claimant had voluntarily withdrawn from the workforce and retired. . . .

Regarding the petition presently before the Judge, Claimant testified that since March 2000, he has applied for work at Wal–Mart and K–Mart. . . .

We believe that this is an attempt by Claimant to relitigate a prior determination. The issue of Claimant's retirement was litigated before Judge Shayhorn and was essential to the determination of a suspension of benefits. A claimant who voluntarily retires from the work place is not entitled to benefits. . . . Claimant's job search subsequent to Judge Shayhorn's Decision is nothing more than an attempt to strengthen weak proofs. . . . Because Claimant was found to have been retired, the reinstatement of benefits is inappropriate. Therefore, the Judge erred in reinstating Claimant's benefits. (Citations omitted).

Board Opinion, April 20, 2006, (Opinion) at 2–3. Claimant petitioned for review with this Court.

Claimant contends that the Board committed an error of law when it reversed the WCJ's reinstatement of Claimant's benefits because the Board determined that a voluntary retirement may never be undone, even where Claimant was actively looking for work.[4]

---

Claimant argues that even though he had voluntarily retired as found by the WCJ in the suspension proceeding, he proved that he returned to the workforce and was actively looking for work. Claimant argues that the Board erred when it determined that someone who voluntarily retired may never return to the workforce.

When a claimant seeks to reinstate benefits after a suspension of benefits, the claimant must establish that the reasons for the suspension no longer exist. A claimant must show that while his injury has continued, his loss of earnings has recurred. The causal connection between the original work-related injury and the disability which gave rise to compensation is presumed. The claimant must prove that through no fault of his own his earning power is adversely affected by his injury and that the injury which gave rise to the original claim continues. *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990).

Initially, this Court must address the Board's determination that the issue of Claimant's retirement was previously litigated in the earlier modification/suspension proceeding and is barred by the doctrines of collateral estoppel and res judicata.

Collateral estoppel, also known as issue preclusion or "broad res judicata, prevents re-litigation in a later action of an issue of fact or law which was actually litigated and which was necessary to the original judgment." *City of Pittsburgh v. Zoning Board of Adjustment of Pittsburgh*, 522 Pa. 44, 55, 559 A.2d 896, 901 (1989).

Collateral estoppel applies when:

(1) the issue decided in the earlier case is identical to the one presented in the later action; (2) there was a final judgment on the merits in the earlier action; (3) the party against whom the plea is asserted was a party, or in privity with a party to an earlier adjudication; (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action; and (5) the determination in the prior proceeding was essential to the judgment. *Cohen v. Workers' Compensation Appeal Board (City of Philadelphia)*, 589 Pa. 498, 503, 909 A.2d 1261, 1264 (2006).

Here, clearly the issue whether Claimant was retired from the workforce was previously litigated. There was a final judgment on the merits in the earlier action, which this Court affirmed, the parties are the same, and Claimant had the opportunity to fully and fairly litigate the issue. Further, the determination in the prior proceeding was essential to the judgment on the suspension of his benefits. While this Court acknowledges that disability compensation benefits may continue following retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related injury. *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson)*, 543 Pa. 74, 669 A.2d 911 (1995). Additionally, in *County of Allegheny Department of Public Works v. Workers' Compensation Appeal Board (Weis)*, 872 A.2d 263 (Pa.Cmwlth.2005), this Court reiterated that disability benefits must be suspended when a claimant voluntarily leaves the labor market when he retires. In *Weis*, this Court refined the requirement that a claimant prove that he

---

mitted, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglin-*

*sky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth. 15, 589 A.2d 291 (1991).

was forced out of the entire labor market due to his work-related injury.

■ Claimant had the opportunity to prove that he was forced out of the entire labor market when he stated he was retired in the modification/suspension proceeding. He failed to do so. He may not attempt to make that argument. He is estopped from doing so. With respect to whether Claimant proved that he was seeking employment after retirement, this Court agrees with the Board that Claimant's applications at Wal–Mart and K–Mart are "nothing more than an attempt to strengthen weak proofs." Opinion at 2.

Accordingly, this Court affirms.

### ORDER

AND NOW, this 16th day of January, 2007, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.